United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Jerald Van Der Laan,<br><br>                                        Debtor. | Bankruptcy No. 15 B 31218<br><br>Chapter 7 |
| Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, and Chicago Regional Council of Carpenters Apprentice and Training Program Fund,<br><br>                                        Plaintiffs<br>                     v.<br>Jerald Van Der Laan,<br><br>                                        Defendant. | Adversary No. 15 A 00910 |

## MEMORANDUM OPINION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16]

Plaintiffs, Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, and Chicago Regional Council of Carpenters Apprentice and Training Program Fund (collectively, "the Funds") filed a complaint against the debtor in a voluntary chapter 7 case, Jerald Van Der Laan, to determine the dischargeability of a debt pursuant to § 523(a)(6) of the Bankruptcy Code. The debt is alleged to arise from transfers of corporate assets made by Van Der Laan after a citation to discover assets was served on him as president of the corporation. Van Der Laan did not dispute that the transfers alleged were made by him, but claimed such transfers were on the corporation's behalf and made to creditors of the corporation in the ordinary course of business. He also denied any debt was owed to the Funds by him personally.

Plaintiffs moved for summary judgment on their nondischargeability claim, arguing that the Defendant's prior admissions regarding his assertedly willful and malicious conduct in transferring corporate assets after the citation to discover assets was served entitled them to relief on their claim as a matter of law.

As discussed below, Defendant's admissions and other the evidence on the record establishes all factual issues necessary to determine dischargeability under § 523(a)(6). In

response, Defendant has failed to create a triable issue as to any essential element of the nondischargeability claim. Because the admissible evidence on the record could not lead to contrary findings, Plaintiffs' motion for summary judgment will be granted.

## SUMMARY JUDGMENT STANDARDS

A motion for summary judgment requires the court to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1999) (citing *Anderson*, 477 U.S. at 249–50). Under Rule 56(a), Fed. R. Civ. P.,

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

*See* Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56). To prevail on a motion for summary judgment, the moving party must establish that there is no genuine issue of material fact as to any essential element of a claim or defense. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. On a motion for summary judgment it is not the court's function to resolve factual disputes or to weigh conflicting evidence. *Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996). Summary judgment is proper when there is only one logical conclusion to be reached by the finder of fact. *Marozsan v. United States*, 90 F.3d 1284, 1290 (7th Cir. 1996), cert. denied, 520 U.S. 1109 (1997); *see Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'").

The court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013). Summary judgment "is appropriate if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (internal quotation marks and citation

2

omitted). "If, after an adequate opportunity for discovery, the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (internal quotation marks and citation omitted). "A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252).

## UNCONTESTED FACTS

Local Bankruptcy Rules 7056-1 and 7056-2 specify mandatory procedures for parties to a motion for summary judgment designed to simplify a determination as to whether a genuine dispute of fact exists, in part, by incorporating the parties' relative burdens in supporting or in opposing a motion for summary judgment under Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56). *See generally Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir. 1994).

Under Local Bankruptcy Rule 7056-1, Plaintiffs, as the movants for summary judgment, were required to file a statement of uncontested material facts in support of their motion, consisting of short, numbered paragraphs with citations to admissible evidence,[1]

---

[1] Local Bankruptcy Rule 7056-1 provides, in relevant part:

A. Supporting Documents Required
With each motion for summary judgment filed under Fed. R. Bankr. P. 7056, the moving party must serve and file a supporting memorandum of law and a statement of material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to judgment as a matter of law, and that also includes:
(1) a description of the parties;
(2) all facts supporting venue and jurisdiction in this court; and
(3) any affidavits and other materials referred to in Fed. R. Civ. P. 56(e).
B. Form - Statement of Facts
The statement of facts must consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.
( . . . . )

3

which they did [*See* Dkt. No. 18]. In response, Van Der Laan, as the party opposing summary judgment, was required to file his own statement, responding to each numbered paragraph and, in the case of disagreement, provide citations to evidence sufficient to establish a genuine dispute for trial exists by including specific reference to the affidavits, parts of the record or other supporting materials relied upon, as required by Local Bankruptcy Rule 7056-2(A)(2)(a).[2] "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 7056-2(B).

Van Der Laan filed his Response [Dkt. No. 28] to Plaintiff's Statement, and has specifically responded to most of the facts included in Plaintiffs' Statement by identifying them as "uncontested." Most of the facts identified in Plaintiffs' Statement have therefore been admitted, to the extent they have not been controverted by Van Der Laan's response to each.

The facts set forth below are drawn from the parties' respective statements and responses to those statements, and are deemed admitted for purposes of the summary judgment motion.

## A. The Parties

Plaintiffs, Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, and Chicago Regional Council of Carpenters

---

[2] Local Bankruptcy Rule 7056-2 provides:

A. Supporting Documents Required
Each party opposing a motion for summary judgment under Fed. R. Bankr. P. 7056 must serve and file the following:
    (1) a supporting memorandum of law;
    (2) a concise response to the movant's statement of facts that will contain:
        (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon; and
        (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon; and
    (3) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e).
B. Effect
All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

4

Apprentice and Training Program Fund (collectively "the Funds") for three separate and independent employee benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. The Funds provide medical, pension, training and other benefits to members of the Chicago Regional Council of Carpenters Union. (*See* Def.'s Resp. to Pl.'s L.R. 7056-1 Stmt. [hereinafter "*Def.'s Resp.*"], ¶ 4.)

Defendant, Jerald Van Der Laan is an individual and resident of Illinois, residing in Western Springs, Cook County, Illinois. (*Id.* ¶ 6.)

Van Der Laan Bros. Concrete Construction Company ("Company") is an Illinois corporation. Debtor was the Company's sole officer and shareholder at all times relevant hereto. (*Id.* ¶ 7.)

### B. The Funds Sue the Company to Recover Unpaid Contributions

In 2012, the Funds sued the Company under the Employee Retirement Income Security Act ("ERISA"), 28 U.S.C. §1001, *et seq.*, seeking to recover unpaid health and welfare benefit contributions, plus liquidated damages, interest and legal fees (the "2012 Action"), in Chicago Regional Council of Carpenters Pension Fund, et al. v. Van Der Laan Brothers Concrete Contractors, Inc., N.D. Illinois Case No. 12 cv 7785 (Judge Kendall). (*Id.* ¶ 8.) The 2012 Action was filed on September 28, 2012. (*Id.* ¶ 9.)

On November 7, 2013, the Funds' motion for summary judgment in the 2012 Action was granted. (*Id.* ¶ 10.) Judgment for damages and attorney fees assessed was to be entered against the Company and in favor of the Funds at a later date. (*See id.* ¶¶ 11, 13.)

1. The BMO Harris Bank Account

On December 20, 2013, while the 2012 Action was still pending, Van Der Laan opened a second bank account for the Company at BMO Harris Bank. (*Id.* ¶ 24.) The Company had maintained its banking accounts at First Midwest Bank, the successor of Palos Bank & Trust Company since as far back as 2008. (*Id.* ¶ 23.)

5

Van Der Laan opened the BMO Harris Bank account because he was concerned that judgment creditors would execute on the Company's assets if they were in the Company's First Midwest Bank account. (*See id.* ¶ 25.)[3]

Van Der Laan controlled how the Company paid its bills and was the only signatory on the BMO Harris Bank account. (*Def.'s Resp.* ¶ 26.) Funds deposited into the BMO Harris Bank account came from amounts paid on the Company's receivables. (*Id.* ¶ 27.)

### 2. Judgment for Damages, Attorneys Fees and Costs Entered

On January 7, 2014, the Funds' attorney fee petition in the 2012 Action was granted. (*Id.* ¶ 11.) The Funds' entitlement to relief as determined in the 2012 Action included attorney fees and costs approved in addition to damages calculated and incorporated into the judgment to be entered in favor of the Funds and against the Company for such amounts.

On March 11, 2014, judgment in the 2012 Action was entered against the Company and in the Funds' favor in the amount of $88,075.72, plus accruing interest, costs and reasonable attorneys' fees. (*Id.* ¶ 13.)

The Company ceased operations in February or March of 2014. (*Id.* ¶ 12.) Supplementary proceedings to enforce and collect on the March 11 Judgment were initiated by the Funds shortly thereafter, and a citation to discover assets of the Company was later issued and continued by the court in the 2012 Action.

In April of 2014, the Funds also filed another suit against the Company under ERISA to recover additional unpaid health and welfare benefit contributions, plus liquidated damages, interest and legal fees (the "2014 Action"), in Chicago Regional Council of

---

[3] In his Response to ¶ 25, Van Der Laan sought to contest this fact with a statement "that he was concerned that First Midwest Bank would levy on his account[,]" and supporting that assertion by his sworn affidavit. However, because Plaintiffs' assertion in ¶ 25 is supported by reference to Van Der Laan's prior sworn statements during a related deposition, which are inconsistent with Van Der Laan's current affidavit in response to summary judgment, the affidavit is insufficient to controvert the prior deposition. *See, e.g., Harmon v. Gordon*, 712 F.3d 1044, 1051-52 (7th Cir. 2013) (noting that "the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony.") (quoting *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996); *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005) (same); *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168–71 (7th Cir. 1996) (discussing policy behind rule discrediting "sham" affidavit and collecting cases).

Carpenters Pension Fund, et al. v. Van Der Laan Brothers Concrete Contractors, Inc., Case No. 14 cv 2876 (Judge Zagel). (*Id.* ¶¶ 14, 15.)

### C. Citation to Discover Assets of the Company Served on the Defendant

On June 14, 2014, the Funds served a citation to discover assets in the 2012 Action on the Company (the "Citation") by serving it upon Van Der Laan as corporate officer. (*Id.* ¶ 17.) The Citation contained the following restraining language, as permitted by 735 ILCS 5/2-1402(f)(1):

> **YOU ARE PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the Judgment Debtor or to which the Judgment Debtor may be entitled or which may be acquired by or become due to the Judgment Debtor and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the Judgment Debtor, until further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment.

(*Id.* ¶ 18.) Van Der Laan read the Citation when he received it. (*Id.* ¶ 19.) He also provided the Company's counsel with a copy of the Citation after it was served on him. (*Id.* ¶ 20.)

Following the service of the Citation, Van Der Laan caused the Company to transfer over $88,000 in Company assets from the BMO Harris Bank account to pay other creditors of the Company in the ordinary course of business, including transfers to Van Der Laan's wife and son, as well as Company creditors that would later be identified in Van Der Laan's bankruptcy schedules as his personal creditors. (*Id.* ¶ 28.)

Van Der Laan did not seek the approval of the court in the 2012 Action, or of the Funds, when he caused the Company to transfer over $88,000 of its assets from the BMO Harris Bank account following the Citation's service. (*Id.* ¶ 29.)

Despite having read the Citation upon receiving it, Van Der Laan caused the Company's transfer of the BMO Harris Bank account proceeds after service of the Citation on him, as sole officer of the Company. (*See id.* ¶¶ 18, 30.)

The transfers were caused by Van Der Laan to be made on the Company's behalf between June 20, 2014 and July 31, 2015. (*See* Answer ¶¶ 25, 26; Compl., Ex. 1.)

Van Der Laan's personal counsel, who was also representing the Company as early as December, 2013, appeared in the 2012 Action on January 20, 2015 on the Company and Van Der Laan's behalf in connection with a Rule to Show Cause filed by the Funds in connection with the Citation. *(Def.'s Rep.* ¶ 21.)

At the time the Citation was served, the Company's total assets were insufficient to pay all its debts as they became due. *(Pls.' Resp.* ¶ 20.) The Company last provided services to customers in February or March of 2014. *(Id.* ¶ 31.) Judgment in the 2014 Action was later entered against the Company and in favor of the Funds on January 26, 2015 in the amount of $139,140.62. *(Id.* ¶ 16.)

With the exception of the monies held in the BMO Harris Bank Account, all other Company assets were eventually assigned and turned over to First Midwest Bank and sold. First Midwest Bank liquidated all of the Company's assets other than monies held in the BMO Harris Bank Account. *(See Pls.' Resp.* ¶ 21, 22)

On September 14, 2015, Debtor filed a voluntary petition for relief under Title 11, Chapter 7 of the Code. *(Def.'s Resp.* ¶ 1.) Defendant listed the Funds as having a disputed claim against him, in an unknown amount, on his Schedule F filed in his underlying bankruptcy case. *(Id.* ¶ 5.)

To date, the Funds have been able to collect approximately $23,000 of the total judgment amount of $88,075.72, plus accruing interest, costs and reasonable attorneys' fees, entered in the 2012 Action. *(See Pls.' Resp.* ¶ 25.) However, amounts awarded in attorney's fees and costs to date appear to exceed amounts collected on the judgment. *(See id.)*

The Citation was continued by court in the 2012 Action upon motion by the Funds, and is currently extended through April 17, 2017. *(Def.'s Resp.* ¶ 22.)

## DISCUSSION

### JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding is

8

thereby referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409.

This adversary proceeding arises under § 523(a) of the Bankruptcy Code, and is a core proceeding under 28 U.S.C. § 157(b)(2)(I). It seeks to determine the dischargeability of a debt. Therefore, it "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

## NONDISCHARGEABLE DEBT

An individual Chapter 7 debtor ordinarily receives a discharge of debts under 11 U.S.C. § 727. Certain categories of "debt" enumerated in § 523(a) are excepted from that discharge, including the provision invoked by the Plaintiffs in this case, *see* 11 U.S.C. § 523(a)(6). The Bankruptcy Code defines the term "debt" as "liability on a claim." 11 U.S.C. § 101(12). Claim, in turn, is broadly defined to include "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5). However, while dischargeability involves a question of bankruptcy law, "the validity of claims in bankruptcy, including the quantum of proof needed to establish a claim, is determined under non-bankruptcy law." *Wish Acquisition, LLC v. Salvino (In re Salvino)*, 373 B.R. 578, 584 (Bankr. N.D. Ill. 2007), *aff'd sub nom.* 2008 WL 182241 (N.D. Ill. Jan. 18, 2008) (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20–21 (2000)).

Van Der Laan has denied that he is liable for any debt alleged by the Funds. However, Plaintiffs assert that liability for the complained acts arose, under Illinois law, for Van Der Laan's violation of the Citation before the bankruptcy case was filed. Because the Citation was issued by a District Court sitting in Illinois, Illinois law governed supplementary proceedings in the District Court and determines liability of orders issued pursuant to those proceedings. *See* Fed. R. Civ. P. 69(a)(1) (providing that supplementary proceedings to enforce a money judgment must "accord with the procedure of the state where the court is located[.]").

## Service of Citation to Discover Assets Gives Rise to Citation Lien

In Illinois, supplementary proceedings to and in aid of judgment or execution are governed by 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277. A citation to discover assets is a supplementary proceeding that enables a judgment creditor to "discover assets or income of the debtor not exempt from the enforcement of the judgment" and to "compel[ ] the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment". 735 ILCS 5/2-1402(a). The purpose of the citation is to assist a judgment creditor in asset discovery and satisfaction of judgment. *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 622 (7th Cir. 2010). The restraining provision quoted earlier is intended to "[forestall] the judgment debtor or a third party from frustrating the supplementary proceedings before the judgment creditor has had an opportunity to reach assets." *Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102, 1111 (N.D. Ill. 2012) (quoting *Bank of Aspen v. Fox Cartage, Inc.*, 126 533 N.E.2d 1080, 1083 (Ill. 1989)).

Section 2–1402 of the Illinois Code of Civil Procedure specifies the procedures that a judgment creditor may rely on to enforce and collect on a judgment. An Illinois judgment creditor may commence supplementary proceedings against a judgment debtor by serving a citation to discover assets against the debtor or a third party holding the debtor's assets. 735 ILCS 5/2–1402(a).

The judgment debtor or a third party may be compelled to apply the discovered assets to satisfy the judgment if an appropriate order compelling turnover of property or title is entered. 735 ILCS 5/2–1402(c). Such order may only be entered after hearing held to ascertain competing rights to the discovered assets. Ill. Sup. Ct. R. 277(c). Until then, a party holding discovered assets has no obligation to turn over those assets. *In re Elmes*, 289 B.R. 100, 106-07 (Bankr. N.D. Ill. 2003). In the meantime, however, the judgment becomes a lien on the judgment debtor's nonexempt assets. *See* 735 ILCS 5/2–1402(m).

The judgment becomes a lien on nonexempt personal property of the judgment debtor—including money and choses of action—that is then owned or thereafter acquired until the time of disposition of the citation. 735 ILCS 5/2–1402(m). Such lien arises upon service of the citation in accordance with the procedures specified in 735 ILCS 5/2–1402(a)

10

and (b). *See Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d. 1102, 111–13 (N.D. Ill. 2012) (describing service requirements established by Illinois Supreme Court Rule 105).

### Plaintiffs' Citation Lien and Restraining Provision

Van Der Laan has not challenged the validity of the Citation or service thereof, and it is undisputed that the Citation was served by the Funds on the Company, through service on Van Der Laan as its President. Service of the Citation on the Company is therefore presumed to be valid, in light of other consistent evidence on the record.

Upon service of the Citation, the judgment against the Company became a judgment lien "upon all personal property belonging to the judgment debtor in the possession and control" of the judgment debtor as well as property which may "thereafter be acquired or come due to the judgment debtor to the time of the disposition of the citation." 735 ILCS 5/2-1402(m).

The Citation contained the following restraining language, as permitted by 735 ILCS 5/2-1402(f)(1), to prohibit any party to whom the citation is directed from interfering with property covered by the citation. It is appropriate to quote it again:

> **YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the Judgment Debtor or to which the Judgment Debtor may be entitled or which may be acquired by or become due to the Judgment Debtor and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the Judgment Debtor, until further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment.**

(*See Def.'s Resp.* ¶ 18 (emphasis and alterations in original).) Under Illinois law, violations of a citation may be punished as follows:

> The court may punish *any party* who violates the restraining provision of a citation as and for contempt, or *if the party is a third party may enter judgment against him or her* in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser.

735 ILCS 5/2-1402(f)(1) (emphasis added). The statute prohibits "any transfer . . . until further order of court or termination of proceedings." The only other exception is as to

11

amounts in excess of the judgment amount. 735 ILCS 5/2-1402(f)(1); (*See Def.'s Resp.* ¶ 18.). Aside from these exceptions, the statute's terms are strict. While courts have discretion in sanctioning contempt, courts do not have to find that the violation was willful and may find a party in civil contempt "if that party has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Shales*, 847 F. Supp. 2d. at 1114.

A corporation that is a judgment debtor and has been served with a citation to discover assets is prohibited from making any payment before making payments to the judgment creditor. *See City of Chi. v. AIR Auto Leasing Co.*, 697 N.E. 2D 788, 791 (Ill. App. Ct. 1998). "Where a corporate officer violates a citation to discover assets, the court may hold him in contempt." *Shales*, 847 F. Supp. 2d. at 1116; *see also id.* (collecting cases). Moreover, "[u]nder Illinois law, 'corporate officers are obligated to obey judicial orders directed at their corporations,' and are personally liable when they permit the corporation to make non-exempt payments in violation of the citation." *Id.* 1116–17 (citation omitted). Accordingly, where a corporation is subject to a citation, "[a] corporate officer's transfer of assets of the cited judgment debtor is a violation of the prohibitions in the citation." *Id.* 1117.

Therefore, it is clear that Van Der Laan can be held liable for transferring corporate assets in violation of the Citation. It is undisputed that Van Der Laan transferred assets of the Company, from the corporation's BMO Harris Bank account and on its behalf, to creditors of the Company while the Citation was pending. Each one of those transfers was in violation of the Plaintiffs' citation lien—which, as noted above, covers after-acquired property, *including money*—and the restraining provision conspicuously included in the Citation. *See* 735 ILCS 5/2–1402(m), (f)(1). It is also undisputed that the Citation was served on Van Der Laan, as President of the Company, and that Van Der Laan gave the Citation to the Company's counsel.

While a determination of final liability need not be made in order to determine dischargeability under § 523(a), potential liability of debtor clearly arose and, in similar cases, has been imposed by other courts under Illinois law. *See, e.g., Shales*, 847 F. Supp. 2d. at 1115–20 (finding corporate officer in civil contempt and holding him personally liable for

12

corporation's judgment debt, plus attorney fees and costs, for transferring corporate funds in violation of a citation).

For dischargeability purposes, the record in this proceeding conclusively shows that Van Der Laan owes a "debt" which may be determined to be nondischargeable pursuant to § 523(a). *See* 11 U.S.C. §§ 101(5), (12), 523(a), 524(a).

## NONDISCHARGEABILITY UNDER § 523(A)(6)

Turning to the statutory provision invoked by the Plaintiffs, § 523(a)(6) excepts from discharge any debt "for willful and malicious by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). A party seeking a declaration that a debt is not discharged bears the burden of proof by preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

To except a debt from discharge under § 523(a)(6), the Plaintiffs must prove three elements by a preponderance of the evidence: (1) the Defendant caused an injury to their person or property interest; (2) the Defendant's actions were willful; and (3) the Defendant's actions were malicious. *See First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013).

### Injury to Property Interest

"Injury" is a violation of another's legal right, for which the law provides a remedy. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013); *Horsfall*, 738 F.3d at 774. The Funds have alleged an injury to an interest in property—their rights to under the citation lien to preserve assets of the Company to satisfy the judgment. The legal right, as described above, arises under the Illinois supplementary proceedings statute, *see* 735 ILCS 5/2–1402(m), (f)(1) (citation lien and restraining provision). The remedy was also discussed earlier—Illinois law allows the court to hold parties in contempt for violating a citation, provides that a third party can be liable for transferring funds of a judgment debtor in violation of the citation, and allows for imposition of attorney fees and costs. *See* 735 ILCS 5/2–1402(f)(1), (h).

As to the violation of the aforementioned legal rights, each transfer of Company funds in violation of the Citation constituted an injury—and liability could be imposed for

13

each in the form of a judgment for amounts transferred. The injuries in this case were ongoing because Illinois law provides that citation liens are imposed on after-acquired property. 735 ILCS 5/2–1402(m). Thus, every receivable that was paid to the Company and transferred by Van Der Laan into the second account with BMO Harris Bank and out of that account, while the citation was pending, was a continuing injury to the legal rights of the Plaintiffs. *In re Marcus-Rehtmeyer*, 784 F.3d 430, 438–39 (7th Cir. 2015) ("The wording of the citation itself also made clear that any interest in assets whether contingent or expectant, must be disclosed . . . . Furthermore, any transfers of funds after receipt of the citation violates the citation lien unless the court gives permission for disbursement.") (citing 735 ILCS 5/2–1402(f).).

It is undisputed that, while the Citation was pending, Van Der Laan caused the Company to transfer over $88,000 in corporate assets in the ordinary course of business to creditors of the company, including family members and joint creditors. It is also undisputed that the transfers were made without the approval of the 2012 Action Court. Had Van Der Laan not transferred the Company's assets without the Court's approval, the Plaintiffs would not have been deprived of the possibility to seek to have those funds to be applied to their judgment as contemplated by the citation. Thus, Van Der Laan's action in violating the Citation inflicted injury upon the Plaintiffs, which the Plaintiffs value at approximately $88,000.00, or the amount of the transfers still remaining due on the judgment. *See* 735 ILCS 5/2–1402(f)(1) (authorizing the court to enter judgment "in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser.").

In Response, Van Der Laan sought to argue that no injury can exist because no legal right existed that could be violated. He fails to offer any citation to authority supporting that contention or competent evidence supporting underlying factual assumptions relied on to make such arguments. Van Der Laan has sought to introduce, as additional facts justifying denial of summary judgment, a series of unsupported statements purporting to establish that another creditor already held a blanket lien over all of the Company's assets. Plaintiffs

14

objected to those statements on the basis that they were not supported by admissible evidence. Those objections were properly raised and are sustained.

For instance, Van Der Laan included statements involving the Company's execution of mortgage and other documents granting interests in property as collateral. Each of those statements is supported by his personal affidavit. Rule 56(e) specifies that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 54(e). Statements describing the existence of documents granting interests in property must offer to introduce those documents and Van Der Laan offers no basis for concluding that his affidavit will do. Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."); *Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 669 (7th Cir. 2003).

Similarly, several of those same statements incorporate legal conclusions, ascertaining the extent or existence of the parties' respective interests in property. "Because legal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which an affiant is competent to testify, legal argument in an affidavit may be disregarded." *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985).

But even if Van Der Laan's arguments were deemed supported, they are incorrect and can disposed of on legal grounds. Debtor has essentially argued that service of Plaintiffs' citation did not create a lien, because the Company's assets at the time were already fully encumbered by the alleged prior superior lien. Debtor offers no statutory authority for this view, and the argument is contrary to recognized principles of commercial and property law. As a preliminary matter, Van Der Laan argues an issue of priority—if there had been a prior lien, that creditor would have priority to those funds. But the Company was still subject to terms of the Citation and the restraining provision, even if some other party could assert a superior interest. The procedure for resolving those competing interests set forth in the supplementary proceedings statute and Illinois Supreme Court Rules.

Lastly, a lien on the particular property in this case—a bank account—cannot be perfected by blanket lien or assignment of rents; such type of "intangible" can only be perfected by control, *see* 810 ILCS 5/9-104, 9-332, 9-327, or by service of a citation. *See W. Bend Mut. Ins. Co. v. Belmont State Corp.*, 712 F.3d 1030, 1034–35 (7th Cir. 2013) (describing assignment of rents versus citation lien rights over account funds). Because the alleged secured creditor was another bank and has not been alleged to have control over the account as a signatory, money in the account cannot be covered by their alleged lien.

Accordingly, even if Van Der Laan's additional facts were properly established, they would be irrelevant and have no bearing on this Motion. Plaintiffs has shown that the Defendant caused injuries to their property interest within the meaning of § 523(a)(6).

**Willful Injury**

Willfulness requires "a deliberate or intentional *injury*, not merely a deliberate intentional *act* that leads to injury." *Horsfall*, 738 F.3d at 774 (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)) (emphasis in original). In other words, "willful" means intent to cause injury, not simply the commission of an intentional act that results in injury. Negligently or recklessly inflicted injuries do not fall within the ambit of § 523(a)(6). *Geiger*, 523 U.S. at 64. In *Geiger*, the Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Recent decisions, however, have found that either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts can establish the requisite intent required by *Geiger*. *See Horsfall*, 738 F.3d at 774 ("willfulness" can be shown if "debtor's motive was to inflict the injury…or the debtor's act was substantially certain to result in injury."); *ColeMichael Invest., LLC v. Burke (In re Burke)*, 398 B.R. 608, 626 (Bankr. N.D. Ill. 2008) (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463–65 (6th Cir. 1999); *Fidelity Fin. Servs. v. Cox (In re Cox)*, 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000).

Plaintiffs in this case can establish willfulness under § 523(a)(6) by showing that Van Der Laan subjectively intended to injure the Plaintiffs or knew that injury was substantially certain to result from his conduct. *See Horsfall*, 738 F.3d at 774. Moreover, in cases dealing with injuries to property interests rather than to a person,

> The true injury is that the creditor's collateral was wrongly or improperly disposed of and that the proceeds were used for purposes other than payment of the obligation that property secured. Consequently, the proper question is not whether the debtor intended that its secured creditor would go unpaid. Instead, the question to ask is whether the debtor intended to improperly use the creditor's collateral and/or its proceeds for purposes other than the payment of the debt that property secured. If so, there is an intentional injury.

*In re Russell*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001). "Because a person will rarely admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury." *In re Burke*, 398 B.R. at 626 (citing *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 723 (Bankr. N.D. Ill. 2002)). Based on the record here, it must be inferred and therefore found that Debtor intended to injure the Plaintiffs or knew that the injury was substantially certain to result from his conduct.

In this case, the record clearly establishes that Van Der Laan intended to use assets clearly covered by the citation lien, and in clear violation of the terms of the citation, to pay other creditors. He therefore intended the injury caused in this case—the citation violation. Van Der Laan argues that while he read the Citation generally, he focused on the date listed on the document regarding the examination and the list of documents requested, and did not pay attention to the Citation's restraining provision or was aware of the consequences of violating it. But this is both unlikely based on the record, and will not excuse his violations under applicable law.

It is undisputed that Van Der Laan received and read the Citation, which included the restraining provision in bolded letters. It is also undisputed that he provided the Company's counsel with a copy of the Citation and personally testified on the Company's behalf at the Citation examination. Van Der Laan cannot now claim he did not read or understand the Citation, and he offers no evidence in support of any contention that illness or lack of vision prevented him from reading.

Moreover, Van Der Laan was obligated to obey orders directed at the Company. *See Shales*, 847 F. Supp. 2d. at 1116–17. The Company was prohibited from making any transfers without court authorization, and Van Der Laan cannot avoid his obligations by

17

claiming ignorance of the law. *See In re Marcus-Rehtmeyer*, 784 F.3d 430, 439 (7th Cir. 2015). He therefore has no cognizable defense excusing his duty to refrain from making transfers.

In his response to this Motion, Van Der Laan spent a lot of time explaining his intent in opening the BMO Harris account. He argues that the reason for opening this account was to protect all creditors other than First Midwest Bank, which included the Plaintiffs. However, as discussed above, Van Der Laan failed to controvert the Plaintiffs' statement of facts, which was based on Van Der Laan's prior deposition—where he stated that he opened the account to avoid levies from creditors *like* the Funds.

Moreover, Van Der Laan's subjective intent in opening the BMO Harris account is not determinative to establish intent at the time he made the transfers. The account was opened several months before the Citation was served and before the transfers were made. The issue here is whether he intended to violate the Citation, or knew that the transfers afterwards were substantially certain to violate the Citation at the time he made those transfers. That was established in this case.

Van Der Laan made several transfers for approximately a year after the Citation was served on the Company, through service on him as President of the Company. He had control over the account and was the sole officer of the corporation. The Plaintiffs have proven that Van Der Laan intended to violate the Citation by making the transfers, or that he knew with substantial certainty that the transfers were likely to violate the Company's obligations under the Citation. The "willfulness" prong of § 523(a)(6) is therefore satisfied.

### Malicious Injury

The third element requires a finding of maliciousness. Conduct is malicious if it is undertaken "in conscious disregard of one's duties or without just cause or excuse." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994); *See also Horsfall*, 738 F.3d at 774 (quoting *Thirtyacre*). Accordingly, to establish malice under § 523(a)(6), Plaintiffs must prove that Van Der Laan (1) intentionally committed a wrongful act; (2) which caused injury to the Plaintiffs; and (3) which has done without just cause or excuse. *See Shriners Hosp. for Children v. Bauman (In re Bauman)*, 461 B.R. 34, 49 (Bankr. N.D. Ill. 2011). Van Der Laan need not

18

have acted with ill will or a specific intent to harm the Plaintiff in order for his conduct to be considered malicious for purposes of § 523(a)(6). *See Thirtyacre*, 36 F.3d at 700.

The record in this case establishes that the violation of the Citation was a wrongful act, done intentionally or with substantial certainty that injury would result, and that it was done without just cause, authority or excuse. Van Der Laan's conduct in transferring assets of the Company after the Citation was served was undertaken in conscious disregard of his duties as officer of the Company, and he cannot, based on the record, claim ignorance or lack of knowledge. It is undisputed that he received the Citation, that he read it, and that he shared it with Company counsel. He had a clear duty, as officer of the Company, to comply with terms of the Citation. Van Der Laan nonetheless transferred corporate assets on the Company's behalf, in clear violation of the Citation, and made multiple transfers throughout approximately one year after the Citation was served and remained pending. Such violations were without just cause or excuse, and injuries were therefore maliciously caused for purposes of § 523(a)(6).

## CONCLUSION

For the foregoing reasons, the Plaintiffs have established that the Defendant owes a debt for willful and malicious injuries that is nondischargeable under § 523(a)(6), and no material and triable issue concerning this proceeding has been shown to be in dispute.

Judgment will be entered accordingly.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of August, 2016

AUG 2 4 2016

15 A 00910
Chicago Regional Council of Carpenters Pension Fund v. Van Der Laan

# CERTIFICATE OF SERVICE

I, Dorothy Clay, certify that on August 24, 2016, I caused to be served copies of the foregoing document to the following by electronic service through the Court's CM/ECF system or regular U.S. mail:

*[signature: Dorothy Clay]*
Judicial Assistant/Deputy Clerk

### Electronic Service through CM/ECF System

Christopher L Muniz
Bruce C Scalambrino
Scalambrino & Arnoff, LLP
One North LaSalle Street
Suite 1600
Chicago, IL 60602
Counsel for Plaintiff

Gregory J Jordan
Mark R Zito
Jordan & Zito LLC
55 West Monroe St., Suite 3600
Chicago, IL 60603
Counsel for Defendant